IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:17-cr-00074(1) |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| JERRY BLACK, | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Jerry Black's Motion to Suppress (Doc. 93), and the responsive memoranda (Docs. 99, 101). An evidentiary hearing was held on November 20, 2017.[1] For the reasons that follow, Defendant's Motion will be DENIED.

I.  FACTS

On February 19, 2016, Cincinnati Police Officer Kerri Maloney prepared and presented an affidavit to a Hamilton County Magistrate Judge for a warrant to search 1821 Tuxworth Avenue, #1, Cincinnati, Ohio 45238. (Doc. 93-1.) The warrant was issued and, as a result of the evidence seized, Defendant Jerry Black and Juanda Bankhead were indicted in the Hamilton County, Ohio Court of Common Pleas. (*See* Defendant's Exh. B.) Mr. Black was indicted on two counts of trafficking in marijuana, two counts of possession of marijuana, one count of receiving stolen property, and one count of having weapons while under a disability. (*Id.*) Ms.

---

[1] At the hearing, defense witness Juanda Bankhead identified and testified about the contents of Defendant's Exhibits A through D during direct examination. Notably, Exhibits B, C, and D—as well as Exhibits E and F offered by Defendant after Ms. Bankhead was excused—are public records from the Hamilton County, Ohio Court of Common Pleas of which the Court may take judicial notice. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969) ("Federal courts may take judicial notice of proceedings in other courts of record.")). This Court, therefore, has "examined the record in state court in an effort to ascertain the facts." *Id.* Ms. Bankhead also identified and testified about Government Exhibits 1 (duplicative of Defendant's Exhibit A), 2, and 3 on cross-examination. As to these exhibits, inasmuch as they were not moved into evidence, the facts that follow regarding them are drawn from Ms. Bankhead's testimony about them.

1

Bankhead was indicted on one count of trafficking in marijuana and one count of possession of marijuana. (*Id.*) On July 26, 2016, Mr. Black entered a plea of guilty to two counts of trafficking (reduced) and one count each of receiving stolen property and having weapons under a disability; he was sentenced to 18 months in state custody. (Defendant's Exhs. E, F.) On August 2, 2016, Ms. Bankhead pled guilty to an amended and reduced charge of disorderly conduct; she simply was required to pay a $100.00 fine. (Defendant's Exhs. C, D.)

On June 21, 2017, Mr. Black was indicted by a federal grand jury with one count of conspiracy to possess with intent to distribute and to distribute marijuana, cocaine, and heroin, in violation of 21 U.S.C. § 846. (Doc. 1, Count 1 at PageID 1.) He has filed a Motion to Suppress with respect to any evidence seized from Tuxworth Avenue, arguing that no facts within the affidavit support probable cause to search the property. The United States, of course, disagrees that the warrant is insufficient and urges that, regardless, the *Leon* good-faith rule[2] would apply. But, as an initial matter, the Government maintains that Mr. Black lacks standing to contest the issuance of the search warrant. The Court will address this question first, and finding it dispositive, renders no opinion on whether Mr. Black's guilty plea in state court acts as a waiver against collateral attack of the warrant here, or whether—on its merits—the affidavit establishes the kind of "fair probability" the Fourth Amendment requires under *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

## II. ANALYSIS

Defendant claims a legitimate expectation of privacy at the Tuxworth Avenue property, and thus protection under the Fourth Amendment, based on his romantic relationship with Ms. Bankhead. (Doc. 101 at PageID 284.) As her boyfriend, he was "a frequent and legitimate

---

[2] *United States v. Leon*, 468 U.S. 897, 922 (1984) (courts typically should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant")

2

overnight guest of Ms. Bankhead at her apartment" on Tuxworth Avenue and thus "has standing to contest the validity of the search warrant." (*Id.*)

Ms. Bankhead testified that she resides at the Tuxworth Avenue property with four of her five children. The unit she rented consisted of two floors and a basement where the washer and dryer are located, as well as a garage. She is the only tenant on her month-to-month lease that she signed on May 31, 2015 and occupancy is limited to herself and her four children, who are specifically named. Ms. Bankhead further testified that Defendant was "not on" the lease, but was (and remains) her boyfriend, had a key to the unit, occasionally stayed overnight on the weekends, and stored clothing there. His contribution to the household was "running errands" for her while she worked at Citibank, which consisted largely of transporting her sons to and from football practice three evenings a week.

"To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share." *Minnesota v. Olson*, 495 U.S. 91, 98 (1990). "Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society." *Id.* "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside." *Id.* at 99.

If the Court were to credit Ms. Bankhead's testimony—a textbook recitation of what distinguishes a "casual" visitor from one with a legitimate expectation of privacy—Defendant plainly would have standing to contest the search at Tuxworth Avenue. *See United States v. Pollard*, 215 F.3d 643, 647–48 (6th Cir. 2000) (standing found when defendant had been friends with lessee for seven years, occasionally spent the night at the residence, kept personal

belongings in the living room closet, and sometimes ate with the family during his visits).
However, the Court does not find Ms. Bankhead's scripted testimony at all believable. Most astonishing was her denial that she neither saw nor smelled the 100 pounds of marijuana discovered in—and eventually seized from—her basement at Tuxworth Avenue, even though she testified that she did laundry in that space *every night*. This Court has a clear recollection of presiding at a previous criminal trial at which only 25 pounds of marijuana was present in the courtroom as evidence, and the smell was, in a word, overwhelming.

Moreover, we question whether Ms. Bankhead actually resides at the Tuxworth property. At the hearing, the Government produced a "Residential Lease Agreement" for property located at 3164 Gobel Avenue, Apt. 2, Cincinnati, Ohio 45211 between Ms. Bankhead and a *different* landlord with a term beginning February 1, 2015 and ending March 1, 2016. (Government Exh. 2.) When asked about the overlap between this lease and the one for Tuxworth Avenue, she said that the dates "can't be right" because she "moved into Gobel" with her mother in 2014. Common sense, of course, undercuts this explanation. Surely a typical landlord—always mindful of the need to protect his interests in the event eviction proceedings become necessary—would not be so careless as to list incorrect start and end dates on a lease, particularly by a whole year *in the future*. The Court is not so gullible as to believe that both landlord *and* tenant failed to catch this mistake.

Defendant offers no evidence other than Ms. Bankhead's improbable testimony in support of his contention that he is entitled to Fourth Amendment protection vis-à-vis the Tuxworth Avenue property. The Court consequently finds that Defendant lacks standing to contest the validity of the search warrant, and hence his Motion to Suppress must be DENIED.

## III. CONCLUSION

For the reasons set forth above, Defendant Jerry Black's Motion to Suppress (Doc. 93) is **DENIED**.

**IT IS SO ORDERED**.

Dated: 12/20/17

Judge Susan J. Dlott
United States District Court